A writ of foreign attachment had been issued at the suit of The Pennsylvania Steel Company and also of seven other attaching creditors, against The New Jersey Southern Railroad Company, to which the Sheriff had returned, attached goods and chattels as per inventory and appraisement annexed, to wit: One passenger coach and ten box cars, one engine and tender and twenty-three platform cars, and by an order of Hon. John W. Houston, A. J., upon the petition of The Pennsylvania Steel Company and the petition of Walton Brothers, the property attached was sold by sheriff for $19,757.00.
The affidavit of Moses W. Seratt taken before a commissioner of the State to take depositions in the city of New York was presented to the court to the following effect; that he resided in Long Branch in New Jersey and was the president of The New Jersey Southern Railroad Company a corporation existing under the laws of that State, and the defendant in the above stated writs of foreign attachment, and that he was a director and also the Superintendent *Page 573 
of The Long Branch and Sea Shore Railroad Company, a corporation also existing under the laws of the State of New Jersey; and that he held those several positions at the time when the attachments were laid as aforesaid, and that to his personal knowledge and belief no single article of the property attached and sold by the sheriff of Kent county in the State of Delaware under the said writs of attachment and the order of a Judge of the Superior Court as aforesaid, belonged to, or was owned by the said New Jersey Southern Railroad Company, the said defendants, at the time of the attachments laid as aforesaid. That the said New Jersey Southern Railroad Company to secure certain of its bondholders, had, on the fourteenth day of September in the year of our Lord one thousand eight hundred and sixty-nine by a mortgage duly made, executed, acknowledged and recorded in New Jersey in those counties thereof through which the said railroad is constructed, granted, bargained and sold, transferred, enfeoffed, aliened, assigned, set over, released, conveyed and confirmed unto Benjamin Williamson of the city of Elizabeth in the State of New Jersey, and George B. Upton of the city of Boston, Massachusetts, in addition to the railway, railroad bridges, depot grounds, station houses c. c, all the vessels, locomotives, tenders, cars and other rolling stock and equipmentsc., of The New Jersey Southern Railroad in and for such trust as were in the said mortgage mentioned, specially to secure the payment of what are called the first mortgage bends of said, railroad. That in and by the said mortgage the said passenger coach and the said ten box cars were transferred and conveyed to the said trustees under the said mortgage, and were thereby their property for the purposes of the said trust under the said mortgage at the time of their attachment and sale as aforesaid. That also upon the seventh day of April 1873, the said New Jersey Southern Railroad Company by another mortgage duly made, executed and acknowledged with the view to the consolidation of their road with certain other railroads in the *Page 574 
States of New Jersey, Delaware and Maryland, and which mortgage is recorded in the Recorder's office of the State of Delaware in and for Kent County, did grant, bargain, sell, transfer, assign, convey, and confirm unto John R. Galland and Walled B. Palmer, of the city of New York, the said attached property to wit, the passenger coach and ten box cars with other property, both real and personal, in, upon and for such trusts as are in the said mortgage specified and mentioned, as in and by the said mortgage so remaining of record appears; and that all the writs of foreign attachment in the heading of this affidavit mentioned were issued at a date subsequent to the said 7th day of April 1873, the date of the said mortgage. That the engine and twenty-three platform cars comprising the residue of the property attached as aforesaid were not the properly of the said defendants, the said New Jersey Southern Railroad Company, at the time of the attachments laid, or since, but that the engine was the property of the said Long Branch and Sea Shore Railroad Company at the time of the attachment and sale of it, whilst the twenty-three platform cars were then the property of one Jay Gould, of the city of New York, although they had originally belonged to The Vineland Railway, a railroad existing under the laws of the State of New Jersey, from which he had prior to that time purchased them, and being interested, in the said Long Branch and Sea Shore Railroad Company, he permitted and allowed it to have and use the said platform cars, and that it afterward loaned the said engine and twenty-three platform cars to the said New Jersey Southern Railroad Company to be used temporarily by it in its work upon the Smyrna and Delaware Bay Railroad in the county of Kent and State of Delaware; and that it was under that bailment the said engine and twenty-three platform cars were within the limits and jurisdiction of the State of Delaware when they were so attached and sold as aforesaid. That deponent had been informed and believed that notice was given to the said sheriff that the said goods and chattels, to wit, the said *Page 575 
passenger coach, box cars and platform cars which he had attached as the property of the said defendants in the said attachments, the said New Jersey Southern Railroad Company, were no; their property prior to the sale thereof by him.
Whiteley, for the defendants, submitted, on the affidavit a motion for a rule on the plaintiffs to show cause wherefore the money arising from the sale of the said goods and chattels so attached and now in the hands of the sheriff, should not be paid into court by him to abide the result of the following issues to be directed to be tried by the verdict of a jury at the bar of the court; whether under and by virtue of an order made on the said attachments, any and what property, viz., one passenger coach and ten box cars belonging to the said Benjamin Williamson and George B. Upton, under a mortgage made and executed on the 14th day of September 1869, by the New Jersey Southern Railroad Company to secure the said property for the purposes of certain trusts in the said mortgage specified, had not been sold as the property of the defendants in the said attachments, the said New Jersey Southern Railroad Company? Secondly, whether under and by virtue of an order made on the said attachments, any and what property, viz., the said locomotive engine belonging to the said Long Branch and Sea Shore Railroad Company had not been sold as the property of the defendants in the said attachments, the said New Jersey Southern Railroad Company? Thirdly, whether under and by virtue of an order made on the said attachments, any and what properly, viz., twenty-three platform cars belonging to one Jay Gould of the City of New York, had not been sold as the property of the defendants in the said attachments, the said New Jersey Southern Railroad Company? And fourthly, if any or all of said property was sold by the said sheriff, for what sum or sums of money it was sold by him?
In support of the motion he referred to Hair. Entries for the form of a judgment of condemnation in rem in such a *Page 576 
case. We have in this State no statute of interpleader, as they have in Pennsylvania and other States, to meet such a case; but that was no reason why the Court could not, or should not do what he proposed in the exercise of its sound discretion and within its power and authority, inasmuch as it would have to pass upon and decide the question of fact involved in it, before it could enter judgment that the property belonged to the defendants in the attachments, but of which it had no evidence, and which it could not decide to be their property when it had no evidence of the fact that it was theirs with the formal affidavit to the contrary now before the court. In the case of the State use of Bishop Thatcher vs. Ogle et al. 2Houst. 371, the Court held that a sheriff who has returned to a writ of foreign attachment duly indorsed thereon, that he had taken the goods of the defendant in the attachment, was not thereby estopped in an action by the plaintiff in the writ against him on his official recognizance for permitting the goods so taken by him, to be removed from his custody, possession and baliwick, from pleading in his defence to such action, that the defendant in it had no properly in goods so taken, and denying that he had any right or title in the same, but that they in point of fact at the time belonged to another. But why should the true and rightful owners of the property in this case, be put to their action of replevin against the sheriff to vindicate their right to the recovery of it, when in this proceeding on the attachments the question must first be decided by the court before any judgment of condemnation can be pronounced by it on the writs of attachment, that it is the property of the defendants in them?
Smithers, (Comegys with him) for the defendants. The whole proceeding is regulated by the statute which prescribes all the steps to be taken in such a case. There is no provision whatever in it for any other person or party to intervene, interplead or to come in to dispute or question the right or title of the defendants in the attachments *Page 577 
to the property on which they were laid. There is a special issue provided for in the statute in a particular case, but except in such a special case, all other claimants and parties affected by the proceeding are left entirely to their common law remedies. The judgment to be rendered in the proceeding imports more than had been contended for on the other side, for it is not only to be a judgment of condemnation, but it must find that the property in the goods was in the defendants when the attachments were laid. It is at the same time admitted on the other side that the application is wholly without precedent in inn-practice; for in no case has a third party ever been allowed any where to intervene in such a suit or proceeding, unless where there was a special statute to provide for it, and it is not in the power or discretion of the Court to permit it to be done without such a special statutory provision; and the fact that it never was done in our Courts, or under our statute, was itself strong ground for the conclusion that the Court has not the power to allow it. But the affidavit, it would be observed, was not made by the parties alleged to be entitled to the goods, or either of them, or by the trustees, or either of them, under the mortgage, or by lay Gould, or by any other party for whose benefit the rule if; asked; but it is made by Mr. Scratt, the President of the New Jersey Southern Railroad Company, the defendants in the writs of attachment. The parties for whose benefit, and on whose behalf the motion for the rule has been made, have, therefore, never appeared in this Court, or presented any claim of property here to the goods in question. They were not without their remedy and redress, however, to assert their claims to them elsewhere, if they have any, as the purchasers of them at the sheriff's sale took only the right and title of the defendants to them at the time of the attachment and sale.
Whiteley, replied.
By the Court. The case is before us merely on the motion *Page 578 
for the rule, and it is not necessary to say anything as to the sufficiency of the affidavit on which the motion for the rule has been made. At common law there was no such proceeding as this, and in this State the whole matter of such a proceeding is regulated by statute; and there never has been, and there never can be any such intervention allowed by the court by one not a party to the proceeding, without some statutory provision to warrant or authorize it; and the fact that no such application has ever before been made in this court, affords a strong and vehement presumption that it has never been considered allowable. The parties on whose behalf the application has been made have no status whatever in this court, and are not even before it, and therefore it was that the court declined to grant the rule asked for, and chose to hear what could be said in support of it, on the motion, merely. The court must consequently refuse the motion and direct judgment to be entered in the proceedings for the plaintiff's in the attachments.